FILED-CLERK
U.S. DISTRICT COURT

2008 MAY -6  AM 10: 14

TX EASTERN-MARSHALL

BY_____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| KATHY KENNEDY, | § | |
|     *Plaintiff* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. *2:08CV191* |
| | § | JURY DEMANDED *TJW* |
| BAUSCH & LOMB, INC. | § | |
|     *Defendant* | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Kathy Kennedy, files her original complaint against Defendant, Bausch & Lomb, Inc.

**I.**
**PARTIES**

1.1    Plaintiff, Kathy Kennedy, is a citizen of the United States and Texas who resides in Gregg County within the Marshall Division of the Eastern District of Texas.

1.2    Defendant, Bausch & Lomb, Inc., is a New York corporation doing business in Texas and deriving substantial profits from its business in Texas.

**II.**
**VENUE AND JURISDICTION**

2.1    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a), because this action, which has an amount in controversy in excess of $75,000, is between citizens of different states. Plaintiff is a Texas citizen, and Defendant has New York citizenship.

2.2    This Court has general and specific personal jurisdiction over Bausch & Lomb because it does business in Texas and has sufficient contacts with the State of Texas, both generally and with regard to this specific action, so that the exercise of

personal jurisdiction over it is proper and will not offend traditional notions of fair play and substantial justice.

2.3     This is a proper venue, pursuant to 28 U.S.C. § 1391(a), because it is the District in which a substantial part of the events or omissions giving rise to the claim occurred and is Bausch & Lomb's residence for purposes of 28 U.S.C. § 1391(c).

2.4     Plaintiff's claims arise from her use of ReNu with MultiPlus and, thus, are not subject to transfer to MDL No. 1785, which concerns ReNu with MoistureLoc.

### III.
### BACKGROUND FACTS

3.1     Kathy Kennedy used ReNu with MultiPlus, manufactured by Defendant Bausch & Lomb. ReNu with MultiPlus is a solution for use with soft contact lenses.

3.2     Unknown to Ms. Kennedy when she purchased and used the ReNu with MultiPlus, it contained a defect in its chemical composition. This defect resulted from the inherent characteristics of ReNu with MultiPlus or from contaminants introduced during manufacture or from a combination of both its formulation and manufacture. Ms. Kennedy was not aware that such side effects were even possible from using ReNu with MultiPlus.

3.3     The ReNu with MultiPlus infected Ms. Kennedy's eye with fusarium fungus and caused her to suffer extreme pain and anguish. She was hospitalized. Plaintiff is scheduled to have additional surgery in May of 2008 to possibly remove her eye.

## CAUSES OF ACTION AGAINST DEFENDANT

### IV.
#### NEGLIGENCE

4.1     Defendant committed acts of omission and commission, which collectively and severally constituted negligence, which was a proximate cause of Plaintiff's injuries and damages.

4.2     Defendant owed Plaintiff the duty to exercise reasonable care in the designing, manufacturing, marketing, formulating, testing, labeling, sterilizing, prescribing, distributing, selling, and placing into the stream of commerce ReNu with MultiPlus  Defendant further owed the duty to exercise ordinary care to prevent users such as Plaintiff to suffer from unreasonable and dangerous side effects and unnecessary injury when using ReNu with MultiPlus as directed for its intended purpose. Defendant breached these duties Plaintiff and proximately caused her injuries and damages.

4.3     Defendant's conduct constituting negligence includes without limitation:

      a.     failing to remove ReNu with MultiPlus from the market when it knew or should have known of the likelihood of serious side effects and injury to its users;

      b.     continue to market and sell ReNu with MultiPlus when it knew or should have known of the likelihood of serious side effects and injury to its users;

      c     failing to use ordinary care in the designing, manufacturing, marketing, formulating, testing, labeling, sterilizing, prescribing, selling, distributing, and placing into the stream of commerce

ReNu with MultiPlus so as to prevent and minimize the likelihood of serious side effects and injury to its users;

d.     failing to include with ReNu with MultiPlus proper warnings regarding all possible side effects associated with the use of ReNu with MultiPlus and the comparative severity and duration of such adverse effects;

e.     failing to warn Plaintiff prior to actively encouraging her purchase and use of ReNu with MultiPlus; and

f.     negligently misrepresenting and concealing the risks and dangers that Defendant knew or should have known involving ReNu with MultiPlus, on which Plaintiff reasonably relied to her detriment.

## V.
### STRICT LIABILITY: DESIGN DEFECT

5.1     At all pertinent times, Defendant Bausch & Lomb was engaged in the business of designing, manufacturing, marketing, formulating, testing, labeling, sterilizing, prescribing, selling, distributing, and placing ReNu with MultiPlus into the stream of commerce.

5.2     When it left the control of Bausch & Lomb, the design and formulation of ReNu with MultiPlus rendered it defective and unreasonably dangerous in that it was prone to contamination.

5.3     ReNu with MultiPlus reached Plaintiff in the condition expected and intended by Bausch & Lomb.

5.4     Plaintiff used ReNu with MultiPlus for its intended and foreseeable purpose.

5.5     There were safer alternative designs and formulations other than the one used, which were economically and technologically feasible and would have prevented or significantly reduced the risk of injury in question.

5.6     The defective design of ReNu with MultiPlus directly and proximately caused Plaintiff's injuries and damages.

## VI.
### STRICT LIABILITY: MANUFACTURING DEFECT

6.1     At all pertinent times, Defendant Bausch & Lomb was engaged in the business of designing, manufacturing, marketing, formulating, testing, labeling, sterilizing, prescribing, selling, distributing, and placing ReNu with MultiPlus into the stream of commerce.

6.2     When it left the control of Bausch of Lomb, defects in the manufacture of ReNu with MultiPlus rendered it defective and unreasonably dangerous in that it was contaminated with fusarium fungus.

6.3     Plaintiff used ReNu with MultiPlus for its intended and foreseeable purpose.

6.4     The defective manufacture of ReNu with MultiPlus directly and proximately caused Plaintiff's injuries and damages.

## VII.
### STRICT LIABILITY: MARKETING DEFECT

7.1     At all pertinent times, Defendant Bausch & Lomb was engaged in the business of designing, manufacturing, marketing, formulating, testing, labeling, sterilizing, prescribing, selling, distributing, and placing ReNu with MultiPlus into the stream of commerce

7.2     When it left the control of Bausch of Lomb, ReNu with MultiPlus was defective and unreasonably dangerous because it contained warnings insufficient to alert users such as Plaintiff of the dangers and risks associated with its use, including but not limited to the risk of serious fusarium fungus infection.

7.3     Defendant failed to give adequate warnings of such risks, which were known or by the application of reasonably developed human skill and foresight should have been known. Defendant further failed to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

7.4     Defendant's failure to provide adequate warnings and instruction rendered ReNu with MultiPlus dangerous to an extent beyond which that would be contemplated by an ordinary user with ordinary knowledge common to the community as to the product's characteristics.

7.5     Fusarium keratitis is an eye infection that can develop through the whole depth of the cornea. The warnings given by Defendant did not accurately reflect the symptoms, scope, or severity of such injury. Symptoms include eye pain, eye discomfort, vision decrease, and light hypersensitivity. Those infected with fusarium fungus who do not receive or do not respond to medical treatment quickly enough may suffer significant vision loss and require surgery, including corneal transplantation. This condition may also lead to partial or complete blindness or loss of the eye altogether or both.

7.6     Plaintiff used ReNu with MultiPlus for its intended and foreseeable purpose.

7.7     The defective manufacture of ReNu with MultiPlus directly and proximately caused Plaintiff's injuries and damages.

## VIII.
### BREACH OF EXPRESS WARRANTY

8.1    Defendant expressly warranted that ReNu with MultiPlus was of merchantable quality, that it did not produce dangerous side effects, that it was adequately tested and fit for its intended use, and that it was safe and fit for use by consumers for its intended purpose of cleaning, rinsing, disinfecting, sanitizing, and storing soft contact lenses.

8.2    Defendant's breach of these express warranties proximately caused Plaintiff's injuries and damages.

## IX.
### BREACH OF IMPLIED WARRANTY

9.1    Bausch & Lomb is a "merchant" as defined in Texas UCC § 2.104, and its ReNu with MultiPlus is a "good" as defined in Texas UCC § 2.105.

9.2    At the time Defendant designed, developed, manufactured, marketed, sold, supplied and/or distributed ReNu with MultiPlus, Defendant knew of the use for which it was intended and implicitly ReNu with MultiPlus to be of merchantable quality and safe and fit for its intended use.

9.3    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether ReNu with MultiPlus was of merchantable quality and safe and fit for its intended, reasonably foreseeable and/or ordinary use.

9.4    In breach of the implied warranties given by Defendant, ReNu with MultiPlus was neither of merchantable quality nor safe or fit for its intended, reasonably foreseeable and/or ordinary use because the product was and is unreasonably dangerous and unfit for the intended, reasonably foreseeable and/or ordinary purpose for which it was to be used due to the defects described above.

9.5    Defendant's breach of implied warranty proximately caused Plaintiff's injuries and damages.

## X.
### GROSS NEGLIGENCE

10.1    Defendant's conduct constitutes gross negligence, which was a proximate cause of Plaintiff's injuries and damages, for which Plaintiff is entitled to recover punitive damages. Bausch & Lomb knew of the risks and dangers associated with the formulation, manufacture, and marketing of ReNu with MultiPlus. Nevertheless, Bausch & Lomb concealed this risks and dangers and sold ReNu with MultiPlus to unsuspecting persons such as Plaintiff.

10.2    Defendant continued to market, sell, and warrant the safety and effectiveness of ReNu with MultiPlus even after learning the product was linked to fusarium keratitis in its users. In November 22, 2006, the FDA alerted the healthcare industry about a recall of the ReNu with MultiPlus contact solution. These lots were allegedly contaminated with bacteria that could result in eye infections and keratitis. The Center for Disease Control confirmed 19 cases of fusarium keratitis from patient's using ReNu with MultiPlus. Nevertheless, Defendant has yet to remove it from store shelves.

## DAMAGES

## XI.
### ACTUAL DAMAGES

11.1    As a result of Defendant's conduct, Plaintiff suffered serious, permanent, and disabling injuries. As a result of the those injuries, Plaintiff suffered in the past and will likely suffer in the future medical expenses, physical pain and mental anguish, loss of earning capacity, impairment, and disfigurement.

## XII.
### PUNITIVE DAMAGES

12.1    Because Defendant is guilty of gross negligence, it should have punitive damages assessed against it in an amount deemed appropriate by the jury.

## XIII.
### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

13.1    Plaintiff seeks pre-judgment and post-judgment interest at the maximum legal rate.

## XIV.
### JURY DEMAND

14.1    Plaintiff requests a jury trial.

## XV.
### CONDITIONS PRECEDENT

15.1    Pursuant to Rule 54 of the Texas Rules of Civil Procedure, all conditions precedent to Plaintiff's rights to recover herein and to Defendant's liability have been performed or have occurred.

## XVI.
### PRAYER

16.1    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this cause be set down for trial before a jury, and that she recover judgment of and from Defendant for her actual damages, punitive damages, in such amount as the evidence may show and the jury may determine to be proper, together with pre-judgment interest, post-judgment interest, costs of suit, and such other and further relief to which Plaintiff may show herself to be justly entitled, whether at law or in equity.

Date: _____

Respectfully submitted,

**WATTS LAW FIRM, LLP**

Robert J. Patterson
Texas State Bar No. 15604500
Federal State Bar No. 748
Austin W. Anderson
Texas State Bar No. 24045189
555 North Carancahua
Tower II, 14th Floor
Corpus Christi, TX 78478
(361) 887-0500
(361) 887-0055 [Facsimile]